IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGEAUX L. LEVAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  21-1829 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                    January 25, 2023

Margeaux L. Levan ("Plaintiff") seeks review of the Commissioner's decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

I.       **PROCEDURAL HISTORY**[2]

Plaintiff protectively filed for DIB and SSI on January 2, 2019, alleging that her disability began on August 31, 2012, as a result of depression, bipolar disorder, attention deficit disorder ("ADD"), panic and anxiety attacks, anemia, attention deficit/hypractivity

---

[1]In her Complaint, Plaintiff names "Commissioner of Social Security" as the defendant in the case.  Doc. 1, Caption.  Kilolo Kijakazi is currently the Acting Commissioner of Social Security, see https://www.ssa.gov/agency/commissioner/ (last visited Jan. 3, 2023).  Therefore, I have amended the caption to identify the Acting Commissioner by name.

[2]Defendant filed the Administrative Record on August 26, 2021.  Doc. 8.  The document filed was incomplete, missing the final 218 pages of the record based on the Index.  When my staff notified defense counsel, he had the record refiled, Doc. 18, but the same pages were missing.  The entire record, including the missing pages, was filed on October 13, 2022.  Doc. 19.

disorder ("ADHD"), irritable bowel syndrome, and thyroid problems.  Tr. at 110, 111, 185, 194, 221.[3]  Plaintiff's applications were denied initially, id. at 114, 119,[4] and Plaintiff requested a hearing before an ALJ.  Id. at 124.  After holding a hearing on February 3, 2020, id. at 30-64, the ALJ found on April 8, 2020, that Plaintiff was not disabled.  Id. at 10-19.  The Appeals Council denied Plaintiff's request for review on February 26, 2021, id. at 1-3, making the ALJ's April 8, 2020 decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1472.

---

[3]To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured ("DLI").  20 C.F.R. § 404.131(b).  The Certified Earnings Record indicates and the ALJ found that Plaintiff was insured through June 30, 2019.  Tr. at 12, 210; see also id. at 86 (Disability Determination Explanation identifying DLI as June 30, 2019).

Plaintiff previously filed for benefits in 2012, which applications were denied initially and by an ALJ, and she was denied review by the Appeals Council on February 23, 2017.  Tr. at 87; see also id. at 68-79 (prior ALJ decision).  Plaintiff did not seek review in the federal court.  Id. at 87.

Although Plaintiff's current applications allege a disability onset date of August 31, 2012, the decision in her prior case prohibits consideration of the period covered by the earlier decision.  See 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1) (res judicata applies when a previous decision was made on the same issues and the prior determination has become final).  Thus, Plaintiff's alleged onset date is February 24, 2017.  See tr. at 10, 35, 86, 108, 109.

[4]It appears that Plaintiff's claims were reconsidered after the initial determination, tr. at 110-11 (Disability Determinations dated May 14, 2019), but no Disability Determination Explanation at the reconsideration level is included in the record, nor is there any letter notifying Plaintiff of a decision on reconsideration.  Additionally, the Notices of Disapproved Claim at the initial stage dated April 2, 2019, indicate that Plaintiff could request a hearing.  Id. at 116, 121.

Plaintiff commenced this action in federal court on April 20, 2021, Doc. 1, and the matter is now fully briefed and ripe for review.  Docs. 13, 14, 17.[5]

## II.   LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.     Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.     If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;
>
> 3.     If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.     If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5.     If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

---

[5]Defendant consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018).  Plaintiff is deemed to have consented to magistrate judge jurisdiction based on her failure to file the required consent/declination form.  See Docs. 3, 6, 7.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

III.   **DISCUSSION**

A.   **ALJ's Findings and Plaintiff's Claims**

The ALJ found that Plaintiff suffers from the severe impairments of anxiety disorder, borderline personality disorder, ADD, and depression.  Tr. at 12.  In addition, the ALJ found that Plaintiff's obesity and gastroesophageal reflux disease are not severe.  Id. at 13.  The ALJ determined that Plaintiff does not have an impairment or combination of impairments that met the Listings, id., and that she retained the RFC to perform work at all exertional levels, with the following non-exertional limitations:  can perform simple, routine tasks; can make simple decisions; can tolerate occasional contact with supervisors, co-workers, and the general public; and can work in an environment where change is infrequent.  Id. at 14.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a server/waiter, but could perform other work in the national economy, including work as a bagger, routing clerk, and garment sorter.  Id. at 17-18.  Therefore, the ALJ found that Plaintiff was not disabled.  Id. at 18.

Plaintiff claims that the ALJ erred by failing to (1) properly consider the opinion evidence offered by Tania Martinez-Jimenez, M.D., Plaintiff's treating psychiatrist, and Richard Small, Ph.D., the state agency psychological consultant, (2) find that Plaintiff met the "C" criteria of the relevant mental health listings, and (3) properly account for Plaintiff's social functional limitations in the RFC finding.  Doc. 13 at 5-17.[6]  Defendant

---

[6]Plaintiff's counsel is reminded of the court's local rule requiring that a Plaintiff's brief in a Social Security case "shall contain separate, labeled sections that set forth

responds that the ALJ's decision is supported by substantial evidence and that the ALJ
properly evaluated the opinion evidence and sufficiently accounted for Plaintiff's social
functional limitations in the RFC assessment.  Doc. 14 at 5-11.  In reply, Plaintiff
addresses the evidence relied upon by Defendant in her brief.  Doc. 17.

### B.  <u>Plaintiff's Claimed Limitations and Testimony at the Hearing</u>

Plaintiff was born on July 26, 1985, making her 31 years old at the time of her
alleged onset date (February 24, 2017), 33 years old at the time of her application
(January 2, 2019), and 34 years old at the time of the ALJ's decision (April 8, 2020).  <u>Tr.</u>
at 185, 194.  She completed high school in special education classes and is pursuing an
associate's degree to become a veterinary technician, taking one or two classes at a time
at Northampton Community College.  <u>Id.</u> at 38-39, 222.  Plaintiff has past relevant work
as a waitress/server.  <u>Id.</u> at 37, 58, 211.

At the hearing, Plaintiff explained that she has difficulty in school because she has
"a hard time understanding and grasping what people say."  <u>Tr.</u> at 38.  Plaintiff testified
that her depression causes her to "stay in bed for . . .  days at a time."  <u>Id.</u> at 46.  Her
anxiety causes racing thoughts and panic attacks three times a month while on Xanax.  <u>Id.</u>

---

clearly and concisely each issue presented for review arising from: (1) specific findings
the Plaintiff contends are not supported by substantial evidence; (2) alleged evidentiary or
administrative errors; and (3) alleged legal errors.  . . .  Facts and legal authority needed
to support arguments shall be concisely noted in the appropriate sections of the brief.
Plaintiff's brief shall reference the supporting evidence in the record by page number . . .
."  Standing Procedural Order for Cases Seeking Social Security Review, ¶ 3 (E.D. Pa.
Nov. 19, 2018; <u>see also</u> Standing Procedural Order for Cases Seeking Social Security
Review, ¶ 3 (E.D. Pa. Dec. 5, 2022); F.R.C.P. Supp. S.S.R. 5 ("brief must support
assertions of fact by citations to particular parts of the record").

When asked why she could not return to her job as a server, she said that she gets "socially overwhelmed."  Id. at 51.  She described her social activity as going "downhill" -- "I can't deal with a whole crowd of people," "it can only be . . .  me with one-on-one." Id. at 53.

Plaintiff's father, Richard D. Levan, also testified at the hearing and explained that Plaintiff has had a series of abusive boyfriends.  Tr. at 55-56.  Mr. Levan explained that Plaintiff has no social life and "spends a lot of time in bed."  Id. at 56.

The VE classified Plaintiff's server/waitress work as light, semi-skilled work.  Tr. at 59.  The ALJ asked the VE to consider someone of Plaintiff's age, education, and work experience, who could perform simple routine tasks, make simple decisions, and tolerate occasional contact with supervisors, coworkers, and the general public, in a work environment where change is infrequent.  Id.  The VE testified that such a person could not perform work as a server/waitress, but could perform the jobs of bagger, routing clerk, and garment sorter.  Id. at 60.  The VE also explained that if the person were limited to no contact with the public, there would be no impact on the ability to perform these jobs.  Id. at 60-61.  However, an inability to perform tandem work would be work preclusive.  Id. at 61.

C. **Summary of the Medical Record**[7]

Plaintiff has a history of anxiety disorder, ADHD, oppositional defiant disorder, major depression, and learning disorders.  Tr. at 591-93 (December 2000 psychiatric

---

[7]Plaintiff's counsel explained at the administrative hearing that, although Plaintiff also suffers from physical impairments, "the larger part is the psychiatric [impairments]."

summary).  Plaintiff participated in individual psychotherapy at St. Luke's prior to her

alleged onset date and the treatment notes from her therapist, Leann Boyer, LCSW,

establish she continued in biweekly psychotherapy through April 2019, with sporadic

gaps in treatment.  See id. at 313-342 (2/8/17-1/10/19), 328 (3/20/18 – noting three

month gap in therapy), 321 (9/4/19 – noting three month gap in therapy), 583 (1/23/19 –

2/13/19), 576-77 (3/27/19 – 4/10/19).  Ms. Boyer's notes indicate diagnoses of recurrent

major depressive disorder ("MDD"),[8]  anxiety,[9] and alcoholism in remission at the

beginning of the relevant period, id. at 342 (2/22/17), with the addition of borderline

personality disorder[10] in October 2017.  Id. at 334.

Throughout this period, Ms. Boyer's notes focus primarily on Plaintiff's

progress/difficulties in her college classes and her relationship with her boyfriend.  The

periodic treatment plans contain goals related to Plaintiff's grades in her classes, feeling

---

Tr. at 34.  Likewise, Plaintiff's claims focus on the ALJ's failure to properly consider the evidence relating to her mental impairments.  Therefore, my discussion of the medical record will focus on Plaintiff's mental health impairments.

[8]The essential feature of MDD is a clinical course that is characterized by one or more major depressive episodes.  Diagnostic and Statistical Manual of Mental Disorders, 5th ed. (2013) ("DSM 5"), at 160-61.  A major depressive episode is a period of at least two weeks during which there is either depressed mood or the loss of interest or pleasure in nearly all activities.  Id. at 163.

[9]"The essential feature of generalized anxiety disorder [("GAD")] is excessive anxiety and worry (apprehensive expectation) about a number of events or activities," and where "[t]he intensity, duration, or frequency of the anxiety and worry is out of proportion to the actual likelihood or impact of the anticipated event."  DSM 5 at 222.

[10]Borderline personality disorder is a "pervasive pattern of instability of interpersonal relationships, self-image, and affects, and marked impulsivity."  DSM 5 at 663.

8

better, losing weight, and maintaining her sobriety after drinking for two days.[11]  See tr.

at 343 (1/11/17 – do well in school and pay off court costs and fines), 340 (5/3/17 – "get

out of this funk"), 335 (8/30/17 – do well in school, lose weight), 332 (12/27/17 – better

diet, feel better), 325 (5/16/18 – remain sober), 319 (10/4/18 – do well in school, have

people to talk to), 582 (2/13/19 – maintain composure with boyfriend).  Ms. Boyer found

that ordinarily Plaintiff had mild or moderate success in addressing her treatment goals,

see, e.g., id. at 317, 324 (mild progress on treatment plan goals), 320, 336, 340, 341

(moderate progress on treatment plan goals), with occasional notations that Plaintiff had

made no progress on a goal.  See id. at 337.  There are also sporadic notes about Plaintiff

socializing with or reaching out to classmates for help with classwork.  Id. at 343 (2/8/17

– asked classmate for help in English), 318 (10/30/18 – talks to a classmate), 583

(2/13/19 - prefers night classes and has been talking to students in her classes).

Plaintiff began seeing psychiatrist Tania Martinez-Jimenez, M.D., at St. Luke's on

February 2, 2018, with complaints of anxiety, anxiety attacks, worsening depression,

poor concentration, and relationship difficulties.  Tr. at 328-29.  On mental status

examination ("MSE"), the doctor noted that Plaintiff had a depressed, irritable, and

anxious mood, labile affect, impaired concentration, limited insight and judgment.  Id. at

329-30.  Dr. Martinez-Jimenez diagnosed Plaintiff with a severe episode of recurrent

MDD (without psychotic features), borderline personality disorder, anxiety state,

---

[11]Plaintiff has a history of alcoholism and began mental health treatment at St
Luke's while on probation for DUIs.  Tr. at 43-44, 351.

alcoholism in remission, and panic disorder,[12] and prescribed Prozac, Ambien, Topamax, Xanax, and Vistaril.[13]  Id. at 328, 331.

Dr. Martinez-Jimenez continued Plaintiff's medication management at St. Luke's thereafter.  In July 2018, Dr. Martinez-Jimenez noted that Plaintiff had a depressed mood, constricted affect, and limited insight and judgment, but her attention span and concentration were intact.  Tr. at 323.  The doctor found that Plaintiff continued to struggle with depressed mood and impulsive eating, with a normal appetite, decreased energy, and a normal number of sleep hours.  Id. at 321.  In December 2018, Dr. Martinez-Jimenez noted that Plaintiff had a constricted affect, and limited insight and judgment.  Id. at 316.  At that time, Plaintiff reported that her mood had been stable, but she reported difficulties with the dosage of Topamax.  Id. at 315.  In February 2019, Plaintiff reported that she stopped taking Topamax because it was causing dizziness and weight gain, but she noticed increased depression.  Id. at 579.  Dr. Martinez-Jimenez

---

[12]"Panic disorder refers to recurrent unexpected panic attacks . . . .  A panic attack is an abrupt surge of intense fear or intense discomfort that reaches a peak within minutes, and during which time four or more of a list of 13 physical and cognitive symptoms occur."  DSM 5 at 209.

[13]Prozac (generic fluoxetine) is a selective serotonin reuptake inhibitor used to treat disorders including MDD.  See https://www.drugs.com/prozac.html (last visited Jan. 11, 2023).  Ambien (generic zolpidem) is a sedative used to treat insomnia.  See https://www.drugs.com/ambien.html (last visited Jan. 11, 2023).  Topamax (generic topiramate) is an anticonvulsant used to treat seizures and prevent migraine headaches.  See https://www.drugs.com/topamax.html (last visited Jan. 11, 2023).  Xanax (generic alprazolam) is a benzodiazepine used to treat anxiety disorders and anxiety caused by depression.  See https://www.drugs.com/xanax.html (last visited Jan. 11, 2023).  Vistaril/Atarax (generic hydroxyzine) is an antihistamine that is also used to treat anxiety and tension.  See https://www.drugs.com/vistaril.html (last visited Jan. 11, 2023).

added bupropion to her regimen and then changed that to Geodon.[14]  Id. at 578-79.  In

March, Plaintiff complained of "sleeping a great deal."  Id. at 577.  On April 10, 2019,

Dr. Martinez-Jimenez found that Plaintiff's mood was depressed and anxious and she had

a constricted affect.  Id. at 575.  The doctor included a diagnosis of ADHD and

prescribed Vyvanse.[15]  Id. at 576.

The psychotherapy notes end in April 2019, but Dr. Martinez-Jimenez continued

treating Plaintiff through September 2019, continuing the diagnoses and medication.  Tr.

at 903 (4/29/19), 907 (6/11/19), 912 (9/5/19).  On January 7, 2020, Dr. Martinez-Jimenez

completed a Mental Impairment Questionnaire, noting diagnoses of MDD, GAD, ADHD,

personality disorder, and insomnia, and noting Plaintiff's limited response to treatment

and fair prognosis.  Id. at 917.  In the 16 categories related to the ability to perform

unskilled work, the doctor found Plaintiff was "seriously limited" in ten of them, and

"unable to meet competitive standards" in the remaining six.  Id. at 919.[16]  In explaining

---

[14]Bupropion (brand name Wellbutrin) is an antidepressant used to treat MDD.  See
https://www.drugs.com/bupropion.html (last visited Jan. 11, 2023).  Geodon (generic
ziprasidone) is an antipsychotic used to treat the manic symptoms of bipolar disorder.
See https://www.drugs.com/geodon.html (last visited Jan. 11, 2023).

[15]Vyvanse is a central nervous system stimulant used to treat ADHD.  See
https://www.drugs.com/vyvanse.html (last visited Jan. 11, 2023).

[16]The form asked the doctor to rate Plaintiff's abilities using a 6-point scale:
"Unlimited or Very Good," "Limited but satisfactory" meaning "your patient has
noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the
workday or work week," "Seriously limited" meaning "your patient has noticeable
difficulty . . .  from 11 to 15 percent of the workday or work week," "Unable to meet
competitive standards," meaning "your patient has noticeable difficulty from 16 to 25
percent of the workday or work week," and "No useful ability to function," meaning

these findings, the doctor stated, "Cognitive Impairment:  significant limitations with attention, concentration, memory." Id. at 920.  When asked to rate Plaintiff's mental abilities to perform semiskilled and skilled work, the doctor found that Plaintiff was "[u]nable to meet competitive standards" in the abilities to understand, remember, and carry out detailed instructions, set realistic goals or make plans independently of others, and deal with stress of work. Id. at 923.  The doctor found that she was "[s]eriously limited" in the abilities to interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places and use public transportation, and that her ability to adhere to basic standards of neatness and cleanliness was limited bit satisfactory. Id.  Similarly, when asked to rate Plaintiff's limitations in a work setting, the doctor indicated Plaintiff had "extreme" limitation in understanding, remembering, and applying information, concentrating, persisting, maintaining pace, adapting in the workplace, and managing oneself in the workplace, and a marked limitation in her ability to interact with others.[17] Id. at 921.

On March 11, 2019, at the Initial Determination stage, Richard Small, Ph.D., found based upon a review of records that Plaintiff suffered from depressive, bipolar, and

---

"your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting." Tr. at 919.

[17]This scale was a 4-point scale:  "None-Mild," "Moderate," "Marked," and "Extreme," with "Marked" meaning the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited," and "Extreme" meaning an inability "to function independently, appropriately, effectively, and on a sustained basis, but it does not mean a total loss of ability to function." Id. at 921.

related disorders, anxiety and obsessive-compulsive disorders, and personality and impulse-control disorders, with a mild limitation in the ability to understand, remember, or apply information, and adapt or manage oneself, and moderate limitation in the abilities to interact with others and concentrate, persist, or maintain pace.  Id. at 91.

    **D.**    **Plaintiff's Claims**

        1.    Opinion Evidence

Plaintiff first argues that the ALJ misapplied the applicable regulations by rejecting the opinion of Dr. Martinez-Jimenez in favor of that of Dr. Small.  Doc. 13 at 11-14; Doc. 17 at 9-11.  Defendant responds that the ALJ's determination is supported by substantial evidence and the ALJ properly considered the opinion evidence.  Doc. 14 at 5-10.

The regulations governing the consideration of opinion evidence, which apply to Plaintiff's claim because it was filed after March 27, 2017, focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).[18]  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship

---

[18]In contrast, the regulations governing prior applications spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. §§ 404.1527, 416.927.

including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1) .  In addition, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

"The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, the ALJ explained his consideration of Dr. Martinez-Jimenez's decision.

> [Plaintiff's] psychiatrist, Tania Martinez Jiminez,
> M.D., opined that [Plaintiff] has marked difficulty interacting
> with others; and extreme difficulty with understanding,

remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself in the workplace; and that she would miss more than 4 days per month ([tr. at 917-23]).  The undersigned does not find this opinion persuasive.  [Plaintiff] has been attending a community college and noted to be doing well in school, although she repeated some science courses due to poor grades ([id. at 307-64, 531-66, 871-916]).  Moreover, [Plaintiff's] treatment note[s] reflect that her [MSEs] were essentially normal with intact memory, attention, concentration, and average intellect, except she had limited insight and judgment.

Id. at 17.

The ALJ's determination that Dr. Martinez-Jimenez's opinion was not persuasive, is supported by substantial evidence.  As previously mentioned, the two most important factors in considering opinion evidence are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Here, the doctor's opinions that Plaintiff had extreme limitation in understanding and remembering information, and concentrating, tr. at 921, and was seriously limited in her ability to understand, remember, and carry out short and simple instructions id. at 919, are in direct conflict with the doctor's findings on MSE that Plaintiff's attention span and concentration were intact, and her short and long term memory was intact.  See id. at 323 (7/13/18), 316 (12/6/18), 580, 901 (2/27/19), 906 (4/29/19), 910 (6/11/19), 914 (9/5/19).[19]  Thus, the doctor's opinions are not supported by her own treatment notes.

---

[19]Similarly, Dr. Martinez-Jimenez's notation that Plaintiff suffered from a cognitive impairment resulting in significant limitations with attention, concentration, and memory, id. at 920, is also in conflict with the doctor's MSEs spanning from July 2018 through September of 2019.

Moreover, as noted by the ALJ, such extreme limitation is not consistent with other evidence in the record.  Although Plaintiff struggled in certain science classes, she was generally successful in her coursework in college.  See tr. at 343 (2/8/17 - C+ in her English class), 342 (3/8/17 – 73 in Biology and B in English), 341 (4/19/17 - "School is going good."), 334 (9/27/17 – struggling in Microbiology, A in English), 318 (10/30/18 – struggling in Chemistry, but doing well in her other class).[20]  Thus, the finding of extreme limitation in this area is also at odds with Ms. Boyer's notes from the therapy sessions.  Additionally, as noted by the ALJ, see id. at 16, the doctor's findings of extreme limitation are inconsistent with Plaintiff's other medical providers' notations that Plaintiff's psychiatric symptoms were unremarkable.  See, e.g., id. at 763 (8/6/18 – Progress note by Donna S. Hungarter, CRNP at LVPG Internal Medicine –"Cognition and memory are normal"), 742 (12/27/17 – "Mental Health:  Negative."), 734 (11/14/17 – "normal mood and affect"), 716 (9/29/17 – "normal mood and affect.  Her behavior is normal.  Judgment and thought content normal"), 706 (6/27/17 – "Cognition and memory are not impaired.  . . . She exhibits normal recent memory and normal remote memory.").

In contrast, the ALJ found Dr. Small's assessment "largely persuasive."  Tr. at 17.

> The state agency's psychological consultant, Richard
> Small, Ph.D., opined that [Plaintiff] has mild difficulty with
> understanding, remembering, or applying information, and

---

[20]In her reply brief, Plaintiff takes issue with Defendant's reliance on her academic activities to undermine her claim of disability.  However, in accessing opinion evidence, the ALJ is required to consider whether the medical opinion is consistent with the record, considering medical and non-medical sources.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ accurately described Plaintiff's academic approach, taking one or two classes at a time and her need to retake certain science classes in which she was struggling.  Tr. at 15.

adapting or managing oneself; and moderate difficulty with
interacting with others and concentrating, persisting, or
maintaining pace; and that [Plaintiff] is able to meet the basic
mental demands of simple, routine tasks on a sustained basis
([tr. at 86-96]).  The undersigned finds this opinion largely
persuasive.  [Plaintiff's] treatment notes reflect that her
symptoms have been improving with medication; she has
been attending college and doing well in all of her courses,
except she was repeating science classes due to poor grades;
and her [MSEs] were essentially normal with intact memory,
attention, concentration, and average intellect, except she had
limited insight and judgment ([id. at 307-64, 531-66, 871-
916]).  The undersigned, however, has considered [Plaintiff's]
subjective complaints as well in finding that she has moderate
limitations in adapting or managing oneself.

Id. at 16-17.[21]

Much of the evidence that undermined Dr. Martinez-Jimenez's findings of

extreme limitation supports Dr. Small's assessment.  His assessment is consistent with

Plaintiff's academic achievements and Ms. Boyer's treatment notes indicating Plaintiff's

difficulties with her relationship with her boyfriend, but an ability to befriend classmates

as previously discussed.  See supra at 8-9.  In addition, the ALJ's observation that

Plaintiff's abilities improved with medication is also supported by the record.  When Dr.

Martinez-Jimenez first met Plaintiff in February 2018, she noted that Plaintiff had an

impaired attention span/concentration.  Tr. at 330.  After changing Plaintiff's medication

regimen, the doctor noted that Plaintiff had an intact attention span/concentration five

---

[21]Although the ALJ referred to Exhibits B2F, B4F, and B10F in referring to the
MSEs, I believe reference to B4F is mistaken and that the proper reference is to B5F.
The treatment notes in B4F are from Plaintiff's primary care physician and gynecologist.
Tr. at 536, 540.  The treatment notes from B5F are from Dr. Martinez-Jimenez and Ms.
Boyer at the Behavioral Health department of St. Luke's.

months later in July 2018, id. at 323, and no further limitations with Plaintiff's

concentration were noted in the MSEs.  See id. at 316 (12/6/18), 580, 901 (2/27/19), 906

(4/29/19), 914 (9/5/19).

In her brief, Plaintiff seems to argue that the diagnoses themselves provide support

for Dr. Martinez-Jimenez's opinions regarding the limitations Plaintiff's mental

impairments impose.

> According to supportability, the more objective
> medical evidence and supporting explanation by medical
> sources are to support his or her medical opinions or prior
> administrative medical findings the more persuasive the
> opinions or finding will be.  Dr. Martinez-Jimenez has
> supportive data in her medical records for [MDD], severe,
> recurrent and [GAD] as well as borderline personality
> disorder.  Signs and symptoms, observations on her part
> during treatment visits include depression, emotional lability,
> disturbing thoughts, unreasonable and irrational fears, and
> others mentioned above.  These are all consistent with for
> example the criteria for depression which includes such
> things per the DSM-5, as the depression most nearly every
> day, markedly diminished interest or pleasure in almost all
> activities most of the day, diminished ability to think or
> concentrate, recurrent thoughts of death and other matters.
> [Plaintiff] has also spoken of the symptoms of anxiety and
> how they affect her including with some panic attacks.

Doc. 13 at 11-12.

The diagnoses are not in question.  The ALJ found that Plaintiff's anxiety

disorder, borderline personality disorder, ADD, and depression are severe impairments.

Tr. at 12.  Although an impairment with which a claimant is diagnosed may have specific

symptoms or cause limitations, the diagnosis is insufficient to establish disability.  See,

e.g., Salles v. Comm'r of Soc. Sec., 229 F. Appx' 140, 145 (3d Cir. 2007) (diagnoses

alone are insufficient to establish severity); <u>Everly v. Astrue</u>, Civ. No. 10-1028, 2011 WL 4102806, at *3 (W.D. Pa. Sept. 14, 2011) ("it is well settled that disability is not determined merely by the presence of a diagnosed impairment, but by the effect that impairment has upon the individual's ability to perform basic work activities and to engage in substantial gainful activity").[22]

> 2.    "C" Criteria

Plaintiff also argues in that her living circumstances meet the "C" criteria of the Listings.  Doc. 13 at 12-13.  The C criteria of the relevant mental health listings requires the following:

> C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder . . . ; *and*
> 2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life . . . .

---

[22]In her reply brief, Plaintiff refers to the symptoms for each of her mental health impairments listed in the DSM 5 as support for the severity of her impairments and to establish their limitations and disability.  <u>See</u> Doc. 17 at 1-2.  Were the court to accept Plaintiff's argument, the diagnosis of MDD or borderline personality disorder would be sufficient to establish disability, which is not consistent with the regulatory scheme.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04C.[23]  Plaintiff argues that Plaintiff's

"supportive family structure and environment" qualify for the "C" criteria.

The ALJ found that Plaintiff did not meet the "C" criteria.

> Regarding the "paragraph C" criteria for listings 12.04 and
> 12.06, the evidence of record does not establish a medically
> documented history of the existence of the disorder over a
> period of at least 2 years, and evidence of both:  medical
> treatment, mental health therapy, psychosocial support(s), or
> a highly structured setting(s) that is ongoing and diminishes
> the symptoms and signs of [Plaintiff's] mental disorders . . . ;
> and marginal adjustment, that is, [Plaintiff] has minimal
> capacity to adapt to changes in [her] environment or to
> demands that are not already part of [her] daily life. . . .

Tr. at 14.  Section 12.00D of the Listings describes the psychosocial supports, structured

settings, and living arrangements that characterize the "C" criteria.  20 C.F.R. Pt. 404,

Subpt. P, App. 1 § 12.00D.[24]  These include participation in a sheltered, supported, or

transitional work program, receiving comprehensive 24/7 wrap-around mental health

services, living in a hospital or institution with 24-hour care.  Id. § 12.00D(1)(c)-(e).

With respect to family supports, the Listing states:

> You receive help from family members or other people who
> monitor your daily activities and help you to function.  For
> example, family members administer your medications,

---

[23]The "C" criteria are identical for Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders).

[24]Section 12.00G of the Listings provides an overview of the C criteria of the mental health listings, and, with respect to the psychosocial supports referenced in the C criteria, refers to section 12.00D to define those supports.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00G(2)(c).

> remind you to eat, shop for you and pay your bills, or change
> their work hours so you are never home alone.

Id. § 12.00D(1)(a).

Although Plaintiff lives with her parents and sister, her family support does not

rise to this level of constant care.  For example, Plaintiff attends college and spends

weekends with her boyfriend, and she spent the summer of 2018 babysitting her

boyfriend's young daughter.  Tr. at 321 (Plaintiff cancelled her summer therapy

appointments "due to she was babysitting her boyfriend[']s daughter.  She would stay at

his house every other week to babysit her"); see also id. at 337 (7/11/07 – reference to

boyfriend's 3 year old daughter).  Thus, the ALJ's determination that Plaintiff does not

meet the "C" criteria is supported by substantial evidence.

### 3.    Social Limitations

Finally, Plaintiff complains that the ALJ failed to properly account for her social

limitations in the RFC finding and hypothetical posed to the VE.  Doc. 13 at 14-16.

Defendant responds that the ALJ properly considered the evidence in crafting the RFC

assessment and the social limitations in the RFC are supported by substantial evidence.

Doc. 14 at 10-11.[25]

The ALJ found that Plaintiff could perform jobs requiring occasional contact with

supervisors, co-workers, and the general public.  Tr. at 14.[26]  Plaintiff argues that the RFC

---

[25]Defendant addressed this claim as a challenge to the VE's testimony, Doc. 14 at 10, but the gravamen of Plaintiff's challenge is the RFC assessment.

[26]    The terms "frequently" and "occasionally" are ascribed
particular meanings in the vocational context.  Performing an

assessment is in conflict with Dr. Martinez-Jimenez's opinion that Plaintiff has marked difficulty in social functioning.  Doc. 13 at 14.  Moreover, Plaintiff argues that, based on the VE's testimony, if Plaintiff were unable to have contact with the general public, she would be disabled.  Id. at 15.  As previously discussed, the ALJ's determination that Dr. Martinez-Jimenez's opinion was not persuasive is supported by substantial evidence.  See supra at 13-19.  Specifically with respect to social functioning, the ALJ's determination that Plaintiff could have occasional contact with co-workers, supervisors, and the general public is supported by Plaintiff's psychotherapy notes in which Ms. Boyer indicated that although Plaintiff had relationship issues with her boyfriend, Plaintiff was able to ask for help from her classmates, a teacher and a tutor.  Id. at 318, 334, 343.  Moreover, Plaintiff expressed a preference for night classes because she began talking to her classmates.  Id. at 583.  As for contact with the general public, Plaintiff mischaracterizes the VE's testimony.  The VE testified that a limitation of no contact with the general public is "not problematic," but the elimination of tandem work would be problematic.  Id. at 61.  The ALJ's determination is supported by substantial evidence.

---

activity "frequently" means it is done from 1/3 to 2/3 of the time, while performing an activity "occasionally" means it is done very little up to 1/3 of the time.

Davis v. Astrue, 741 F. Supp.2d 582, 590-91 (D. Del. 2010) (citing Social Security Ruling ("SSR") 83-14, 1983 WL 31254, at *2 (1983); SSR 83-10, 1983 WL 31251, at *5-6 (1983)); see also Program Operations Manual System https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last visited Jan. 11, 2023) (use of the term "occasional" in an "RFC means that the activity or condition occurs at least once up to one-third of an 8-hour workday"); Edelman v. Comm'r of Soc. Sec., 83 F.3d 68, 71 n.2 (3d Cir. 1996) ("POMS is the authorized means for issuing official Social Security policy and operating instructions.  POMS § AO200002.001.  These regulations do not have the force of law.")).

**IV.**     **<u>CONCLUSION</u>**

The ALJ's decision is supported by substantial evidence.  The ALJ properly considered the opinion evidence and accounted for the credibly established limitations in his RFC assessment.  Similarly, the ALJ's determination that Plaintiff did not meet the "C" criteria of the relevant mental health listings is supported by substantial evidence.

An appropriate Order follows.